IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Christopher Lee Pride, #281240, | ) | Civil Action No.:2:15-cv-00590-HMH-MGB |
| | ) | |
| Petitioner, | ) | |
| | ) | **ORDER AND** |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Joseph McFadden, *Warden*, | ) | |
| | ) | |
| Respondent. | ) | |

The Petitioner, a state prisoner proceeding *pro se*, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court upon Respondent's Motion for Summary Judgment (Dkt. No. 17; *see also* Dkt. No. 18) and Petitioner's Motion to Amend (Dkt. No. 21).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this Magistrate Judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

The Petitioner brought this habeas action on or about February 6, 2015. (*See* Dkt. No. 1-3 at 1 of 2.) On September 10, 2015, Respondent filed a Motion for Summary Judgment. (Dkt. No. 17; *see also* Dkt. No. 18.) By order filed September 10, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 19.) On September 21, 2015, Petitioner filed a Motion to Amend his Petition (Dkt. No. 21.) Respondent filed a Response in Opposition to the Motion to Amend on October 13, 2015. (Dkt. No. 22.) On or about December 1, 2015, Petitioner filed his Response in Opposition to the Motion for Summary Judgment. (Dkt. No. 30.) For the reasons set forth herein, Petitioner's Motion to Amend (Dkt. No. 21) is granted, and the undersigned recommends granting the Respondent's Motion for Summary Judgment (Dkt. No. 17).

## PROCEDURAL HISTORY

The Petitioner is currently confined at Tyger River Correctional Institution of the South Carolina Department of Corrections. In June of 2003, the Union County Grand Jury indicted

1

Petitioner for (a) Possession of Crack Cocaine with Intent to Distribute Within Proximity of a School, Public Park or Public Playground and (b) Possession of Crack Cocaine with Intent to Distribute. (R. at 108-11.) Although Petitioner originally retained Attorney Fletcher Smith to represent him, Mr. Smith was relieved as counsel of record. (*See* R. at 5.) Petitioner qualified for court appointed counsel, and William All, Esquire, was appointed to represent Petitioner. (*See* R. at 1-5.) The case was called for trial on October 13, 2004 before the Honorable John C. Hayes, III, but Petitioner failed to appear. (*See* R. at 1-4.) After some background explanation by Mr. All, the solicitor moved to try Petitioner *in absentia*. (R. at 1-9.) Mr. All moved to be relieved as counsel, and the court granted that motion. (R. at 10-11.) Judge Hayes also granted the solicitor's motion to try Petitioner *in absentia*. (R. at 8-17.) The jury trial took place on October 13, 2004, and the jury found Petitioner guilty as charged. (R. at 1-94.) Judge Hayes sentenced Petitioner but sealed the sentence until Petitioner was arrested. (*See* R. at 102.)

On January 18, 2005, Petitioner appeared before the Honorable G. Thomas Cooper, Jr. (R. at 95-106.) Mr. All was present at this hearing and was appointed so that he could perfect an appeal on Petitioner's behalf. (*See* R. at 103-05.) Judge Cooper read Judge Hayes' sentence. (R. at 105-06.) Petitioner was sentenced to fifteen years for Possession with Intent to Distribute Crack Cocaine in Proximity of a School and twenty-five years, concurrent, for Possession with Intent to Distribute Crack Cocaine, second offense. (R. at 105-06.)

Petitioner appealed and was represented by Robert M. Dudek, Esquire, and Fletcher N. Smith, Jr., Esquire. (*See* Dkt. No. 18-1 at 127 of 194.) On September 8, 2006, Petitioner raised the following issue in his Final Brief of Appellant:

> Whether the court erred by relieving appellant's appointed counsel immediately before appellant's jury trial in his absence began since not "sufficiently cooperating" did not justify this drastic step, and the judge's ruling that appellant waived his right to counsel by his conduct was an abuse of discretion?

(*Id*. at 130 of 194.) On February 20, 2007, the South Carolina Court of Appeals issued a published opinion affirming Petitioner's convictions and sentences. *See State v. Pride*, 372 S.C. 443, 641 S.E.2d 921 (Ct. App. 2007). Petitioner filed a Petition for Rehearing, which was granted on July 2, 2007.

2

(*See* Dkt. No. 18-1 at 162 of 194.) On December 5, 2007, the South Carolina Court of Appeals withdrew the previously filed opinion and substituted a separate opinion affirming Petitioner's convictions and sentences. *See State v. Pride*, No. 2007-UP-554, 2007 WL 8400156 (S.C. Ct. App. Dec. 5, 2007). Petitioner filed a Petition for Rehearing and a Petition for Rehearing En Banc, both of which were denied by the South Carolina Court of Appeals. (Dkt. No. 18-1 at 176-77 of 194.)

On February 19, 2009, the Supreme Court of South Carolina granted the petition for writ of certiorari. (Dkt. No. 18-1 at 179 of 194.) However, on December 14, 2009, the Supreme Court of South Carolina dismissed the writ as improvidently granted. (Dkt. No. 18-1 at 180-81 of 194.) The matter was remitted to the lower court on December 30, 2009. (Dkt. No. 18-1 at 182 of 194.) Petitioner then appealed to the United States Supreme Court; the Court denied certiorari on June 21, 2010. (*See* Dkt. No. 18-1 at 183 of 194.)

Petitioner filed an application for post-conviction relief ("PCR") on August 23, 2011. (*See* Dkt. No. 18-1 at 184-89 of 194.) Therein, Petitioner contended, *inter alia*, that counsel was ineffective in "fail[ing] to communicate with client upon date of court," resulting in Petitioner being tried *in absentia*. (Dkt. No. 18-1 at 186 of 194.) Respondent filed a Motion to Dismiss, arguing the PCR application was barred by the statute of limitations. (Dkt. No. 18-1 at 191-94 of 194.) On January 4, 2012, Judge Alford signed a Conditional Order of Dismissal; Petitioner filed a Reply indicating that he believed he had one year from the date of Fletcher Smith's letter within which to timely file a PCR application.[1] (*See* Dkt. No. 18-2 at 2-7 of 120.) On December 3, 2012, Petitioner amended his PCR application to include the following specific allegations of ineffective assistance of counsel:

---

[1]Mr. Smith's letter to the Petitioner is dated May 31, 2011. (*See* Dkt. No. 18-2 at 7 of 120.) That letter states,
    Pursuant to our conversation I am herewith enclosing a Post Conviction Relief form for your review and action. You have a year to file this matter. You need to contact Mr. Dudek who handled your appeal to see when the U.S. Supreme Court ruled against you.
    If you need representation on this matter, please feel free to contact the lawyer of your choice or consult with my firm.
(*Id.*)

3

1. As to representation rendered by William All, Esquire:
   a. Ineffective assistance of counsel for failure to effectively argue against trial in absence.
   b. Ineffective assistance of counsel for failure to protect client's right to counsel during trial in absence.
   c. Ineffective assistance of counsel for failure to file a Motion pursuant to Rule 29(a), SCRCrimP, following his reappointment during Applicant's sentencing hearing.
2. As to representation rendered by Fletcher Smith, Esquire:
   a. Ineffective assistance of counsel for failure to act on guilty plea offer communicated to Applicant.
   b. Ineffective assistance of counsel for failure to appear in court at trial or sentencing to address the existence of an attorney/client relationship with Applicant.

(Dkt. No. 18-2 at 9-10 of 120.)

On February 8, 2013, an evidentiary hearing was held before the Honorable Lee S. Alford. (*See* Dkt. No. 18-2 at 12-81 of 120.) Petitioner was present and represented by Tricia A. Blanchette, Esquire. (*See* Dkt. No. 18-2 at 12 of 120.) In an order filed on April 2, 2013, Judge Alford denied the application for post-conviction relief and dismissed the petition. (Dkt. No. 18-2 at 83-97 of 120.) Petitioner filed a Motion to Alter or Amend, and on April 25, 2013, an Amended Order of Dismissal was filed. (*See* Dkt. No. 18-2 at 99-119 of 120.) Also on April 25, 2013, Judge Alford's order "declin[ing] to further amend the Order in response to the Rule 59 motion" was filed. (*See id*. at 120 of 120.)

Petitioner appealed, and on January 22, 2014, through attorney Tricia A. Blanchette, he filed a Petition for Writ of Certiorari. (Dkt. No. 18-5.) Therein, Petitioner raised the following issues:

I. Whether the lower court erred in finding that counsel was not ineffective for failing to communicate and/or act on a plea offer of ten years and that Petitioner was not prejudiced as a result.

II. Whether the lower court erred in finding that counsel was not ineffective for failing to request a continuance and/or argue against Petitioner being tried in his absence.

III. Whether the lower court erred in finding that counsel was not ineffective for failing to make a motion for a new trial after his reappointment during Petitioner's sentencing hearing.

4

(Dkt. No. 18-5 at 3 of 22.)

In an order dated August 6, 2014, the South Carolina Supreme Court denied the petition for a writ of certiorari. (Dkt. No. 18-7.) Petitioner filed a Petition for Rehearing, which was denied by the South Carolina Supreme Court on October 23, 2014. (Dkt. No. 18-8; Dkt. No. 18-9.) The matter was remitted to the lower court on October 23, 2014. (Dkt. No. 18-10.)

On or about February 6, 2015, Petitioner filed the instant habeas petition, wherein he raised the following grounds for review (verbatim):

> **Ground One**: Was Petitioner deprived of the guarantees and benefits of the Fifth, Sixth and Fourteenth Amendment rights where he was tried upon a state created indictment without benefit of trial counsel and/or a record demonstrating an intentional waiver and/or relinquishment of the right to counsel?
>
> **Ground Two:** Was Petitioner afforded the full panoply of rights and benefits guaranteed to him under the Fifth, Sixth and Fourteenth Amendment where he was tried upon a state created indictment without benefit of notice, or a knowingly and intelligently [sic] waiver to be presented at a trial by jury?
>
> **Ground Three**: Was trial counsel and/or public defender ineffective for failing to disclose a plea offer of 10-years, thereby, demonstrate a [sic] deficient performance which included a[] lesser-included offense, causing him to have imposed a harsher punishment?

(Dkt. No. 1 at 6-16 of 24.)

In Petitioner's Motion to Amend, Petitioner states that he requests leave to amend his petition to "add ineffective assistance of counsel per 'William All' as his ground four (4) upon his pending habeas petition." (Dkt. No. 21 at 1-2 of 4.) Petitioner contends that attorney All was ineffective in "failing to request a continuance and/or argue against Petitioner being tried in his absence" and in "failing to make a motion for a new trial after his reappointment during Petitioner's sentencing hearing." (Dkt. No. 21-1 at 2-8 of 12.)

## APPLICABLE LAW

### Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the

5

movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## DISCUSSION

As noted above, this matter is before the Court upon Respondent's Motion for Summary Judgment (Dkt. No. 17; *see also* Dkt. No. 18) and Petitioner's Motion to Amend (Dkt. No. 21.)

**I**.    **Statute of Limitations**

Respondent contends, *inter alia*, that the instant habeas petition is barred by the statute of limitations. (*See* Dkt. No. 18 at 37-38.) Pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214, a person "in custody pursuant to the judgment of a State court" and who seeks federal habeas relief is subject to a one-year statute of limitations. 28 U.S.C. § 2244(d)(1). The one-year period to file a § 2254 petition commences upon the latest of the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1)(A)-(D). The one-year period to file a § 2254 petition, however, is tolled during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id*. § 2244(d)(2).

Even if the limitations period is not tolled under the statute, a § 2254 petition may nevertheless be considered timely if the petitioner can demonstrate that he is entitled to equitable tolling. The Supreme Court recognized that the limitations period may be equitably tolled if the petitioner shows (1) he has been diligently pursuing his rights and (2) some extraordinary circumstance stood in his way, preventing him from timely filing his habeas petition. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Therefore, "specific circumstances . . . could warrant special treatment in an appropriate case." *Id.* at 650.

Respondent contends that Petitioner "is in violation of the AEDPA one (1) year statute of limitations by over three (3) years and seven (7) months." (Dkt. No. 18 at 38.) Respondent asserts that the statute of limitations began running on June 22, 2010 and "continued to run until it expired on June 22, 2011." (*Id.* at 37.) Respondent further asserts that the PCR action did not "toll the AEDPA one (1) year statute of limitations because the AEDPA one (1) year statute of limitations had already expired on June 22, 2011." (*Id.* at 37-38.)

Petitioner's direct review concluded on June 21, 2010, when the United States Supreme Court denied certiorari. (*See* Dkt. No. 18-1 at 183 of 194.) The AEDPA statute of limitations therefore began running on June 22, 2010. Petitioner filed his application for PCR on August 23, 2011. (*See* Dkt. No. 18-1 at 184-89 of 194.) Thus, at the time he filed his application for PCR, 427 days of non-tolled time had passed. Petitioner's PCR application was pending until October 23, 2014; he filed the instant § 2254 petition on  February 6, 2015. (*See* Dkt. No. 18-10; Dkt. No. 1-3 at 1 of 2.) Accordingly, 105 days of non-tolled time passed between the time his state PCR proceeding concluded and the time he filed his § 2254 petition. In total, 532 days of non-tolled time passed between the conclusion of direct review and the filing of Petitioner's habeas petition. His petition is untimely by 167 days.[2]

When a § 2254 petition is untimely, the petitioner may be entitled to equitable tolling.[3] "A petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights

---

[2]While Respondent argues that none of the time the PCR application was pending was tolled, the undersigned disagrees. As noted above, the one-year period to file a § 2254 petition is tolled during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." It is true that "'[w]hen a postconviction petition is untimely under state law, that [is] the end of the matter for purposes of § 2244(d)(2).'" *Allen v. Siebert*, 552 U.S. 3, 7 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005)). Here, however, the state court did *not* reject Petitioner's PCR application as untimely. 28 U.S.C. § 2244(d)(2). Instead, the state court held an evidentiary hearing and addressed the merits of Petitioner's claims.

[3]Additionally, the United States Supreme Court has held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). In the case *sub judice*, Petitioner has not asserted actual innocence.

diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (internal quotation marks omitted). Petitioner bears the burden of showing that he is entitled to equitable tolling. *Pace*, 544 U.S. at 418.

In his Response in Opposition to the Motion for Summary Judgment, Petitioner cites *Maples v. Thomas*, 132 S. Ct. 912 (2012), and contends that Respondent's statute of limitations argument "is misplaced[ w]here his appellate [counsel] abandon[ed] him in failing to inform Petitioner of the one year to file his P.C.R. until June of 2011." (Dkt. No. 30 at 2 of 22.) Petitioner also asserts that he is entitled to equitable tolling as he "has been pursuing his rights diligently once he was informed of the one year to file his P.C.R." (*Id*.)

In *Maples*, the Supreme Court addressed "whether [the petitioner] ha[d] shown that his attorneys of record abandoned him, thereby supplying the extraordinary circumstances beyond his control, necessary to lift the state procedural bar to his federal petition." *Maples*, 132 S. Ct. at 924 (internal quotation marks and citations omitted). The "uncommon facts" before the Court in *Maples* involved an Alabama death-row petitioner represented by three attorneys in his state post-conviction proceeding: two New York attorneys serving *pro bono*, and an Alabama attorney designated as local counsel who "would facilitate [the New York attorneys'] appearance, but would undertake no substantive involvement in the case." *Id*. at 916, 922. While the post-conviction petition was pending, the two New York attorneys left the law firm, and their new employment prevented them from continuing to represent the petitioner. *Id*. at 916. They did not inform the petitioner of their inability to continue representing him, nor did they seek the Alabama court's permission to withdraw. *Id*. at 916-17. The Alabama court subsequently denied the post-conviction petition and mailed notice to the New York attorneys at the address of the law firm with which they had been associated. *Id*. at 917. The mailings were returned to the clerk, and "[w]ith no attorney of record in fact acting on Maples' behalf, the time to appeal ran out." *Id*. This failure to timely appeal led to the lower courts' conclusion that his claims were procedurally defaulted. *Id*.

9

Citing *Coleman v. Thompson*, 501 U.S. 722 (1991), the Court stated that it does not "disturb" the general rule that "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'" *Maples*, 132 S.Ct. at 922 (citing *Coleman*, 501 U.S. at 753). However, the Court found that "[a] markedly different situation is presented . . . when an attorney abandons his client without notice, and thereby occasions the default." *Id*. The Court stated, "Having severed the principal-agent relationship, an attorney no longer acts, or fails to act, as the client's representative. His acts or omissions therefore cannot be fairly attributed to the client." *Id*. at 922-23 (internal quotation marks and citations omitted). The Court concluded that "under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him. Nor can a client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him." *Id*. at 924. The Court also noted that while *Holland v. Florida*, 560 U.S. 631 (2010) "involved tolling of a federal time bar," and *Coleman* "concerned cause for excusing a procedural default in state court," "[w]e see no reason . . . why the distinction between attorney negligence and attorney abandonment should not hold in both contexts." *Maples*, 132 S.Ct. at 923 n.7. The Court found that, in this case, "[t]here was indeed cause to excuse Maples' procedural default" because, "[t]hrough no fault of his own, Maples lacked the assistance of any authorized attorney during the 42 days Alabama allows for noticing an appeal from a trial court's denial of postconviction relief," and "he had no reason to suspect that, in reality, he had been reduced to *pro se* status." *Id*. at 927.

As noted above, Petitioner contends that his "appellate [counsel] abandon[ed] him in failing to inform [him] of the one year to file his P.C.R. until June of 2011." (Dkt. No. 30 at 2 of 22.) The record does contain a letter dated May 31, 2011 from Attorney Fletcher N. Smith, Jr. to Petitioner. (*See* Dkt. No. 18-2 at 7 of 120.) That letter states,

> Pursuant to our conversation I am herewith enclosing a Post Conviction Relief form for your review and action. You have a year to file this matter. You need to contact Mr. Dudek who handled your appeal to see when the U.S. Supreme Court ruled against you.

> If you need representation on this matter, please feel free to contact the lawyer of your choice or consult with my firm.

(*Id.*)

The undersigned discerns no abandonment by counsel. Petitioner contends he was abandoned because "appellate [counsel] . . . fail[ed] to inform [him] of the one year" statute of limitations to file his PCR application. (Dkt. No. 30 at 2 of 11.) The case *sub judice* is similar to the Fourth Circuit's case of *Harris v. Hutchinson*, 209 F.3d 325 (4th Cir. 2000). In *Harris*, when the petitioner's post-conviction relief counsel learned of the state court's final decision on Harris' petition, counsel wrote Harris a letter and erroneously advised him that he had one year from the date the state post-conviction relief proceedings concluded to file a habeas petition in federal court. *Harris*, 209 F.3d at 326-27. The district court dismissed the § 2254 petition as time-barred, and the petitioner appealed. *Id.* at 327.

The Fourth Circuit concluded that the petitioner in *Harris* was not entitled to equitable tolling. The court stated, *inter alia*,

> As a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules. The doctrine has been applied in two generally distinct kinds of situations. In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant. In the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time. But any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where-due to circumstances external to the party's own conduct-it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Id.* at 330 (internal quotation marks and citations omitted). The petitioner argued "that equitable considerations justify tolling in his case because the missed deadline was the result of an innocent misreading of the statutory provision by his counsel." *Id.* The Fourth Circuit stated,

> While we agree that the mistake by Harris' counsel appears to have been innocent, we cannot say that the lawyer's mistake in interpreting a statutory provision

constitutes that "extraordinary circumstance" external to Harris that would justify equitable tolling. Moreover, the mistake in this case is not extenuated by any lack of clarity in the statute. The language of § 2244(d) provides unambiguously that the one-year period within which a federal habeas petition must be filed commences on the "conclusion of direct review." This language does not contribute to a misunderstanding that would have the time commence on the "conclusion of State post-conviction proceedings."

In short, a mistake by a party's counsel in interpreting a statute of limitations does not present the extraordinary circumstance beyond the party's control where equity should step in to give the party the benefit of his erroneous understanding.

*Id.* at 330-31 (citations omitted).

While *Harris* did not involve the alleged abandonment by counsel, the alleged action (or inaction) by the attorney is analogous. In *Harris*, the attorney gave the petitioner incorrect advice. In the case *sub judice*, Mr. Smith wrote Petitioner a letter dated May 31, 2011, indicating that Petitioner had one year to file his application for post-conviction relief. (Dkt. No. 18-2 at 7 of 120.) To the extent Petitioner interpreted that letter indicating he had a year from the date of the letter to file his application for PCR, that would have also been–similar to the advice in *Harris*–bad advice. The reasoning of *Harris* applies to the case *sub judice*, and even the Court in *Maples* indicated that it did not "disturb" the general rule that "[n]egligence on the part of a prisoner's postconviction attorney not qualify as 'cause.'" *Maples*, 132 S.Ct. at 922 (citing *Coleman*, 501 U.S. at 753). The attorney's alleged failure to tell Petitioner of the deadline to file his PCR application simply does not amount to abandonment by counsel, and "appellate counsel's alleged failure to correctly inform [the petitioner] of the proper statute of limitations deadline does not amount to extraordinary circumstances justifying the application of equitable tolling." *See Cadet v. Fla. Dep't of Corrs.*, 742 F.3d 473, 484 (11th Cir. 2014) ("Negligence, however gross, is not the same as abandonment. If it were, there would be no point in *Maples*' refinement or explication of what *Holland* said. Abandonment, which *Maples* made the standard, denotes absolute renunciation or withdrawal, or a complete rejection or desertion of one's responsibilities, a walking away from a relationship."); *Kelley v. Bollinger*, Civ. A. No. 8:12-cv-03008-JMC, 2013 WL 4460155, at *1 (D.S.C. Aug. 15, 2013) ("Petitioner's appellate counsel's alleged failure to correctly inform him of the proper statute

12

of limitations deadline does not amount to extraordinary circumstances justifying the application of equitable tolling.") (citations omitted)); *Bradshaw v. McCall*, Civ. A. No. 0:12-cv-03624-DCN, 2014 WL 463142, at *4 (D.S.C. Feb. 4, 2012) (rejecting the petitioner's argument that he is "entitled to equitable tolling because his counsel failed to inform him of the deadline for filing a federal habeas petition," finding that the petitioner was "not entitled to equitable tolling even if his appellate counsel failed to inform him of AEDPA's statute of limitations").

Because the instant petition is untimely, and Petitioner has not established that counsel abandoned him or that he is entitled to equitable tolling, Respondent's Motion for Summary Judgment (Dkt. No. 17) should be granted.

**II**.     **Merits**

Although the undersigned recommends concluding that the instant petition is barred by the statute of limitations, in the alternative, the undersigned recommends concluding that Petitioner is not entitled to relief for the following reasons.

**A. Motion to Amend (Dkt. No. 21)**

In his Motion to Amend, Petitioner states that he requests leave to amend his petition to "add ineffective assistance of counsel per 'William All' as his ground four (4) upon his pending habeas petition." (Dkt. No. 21 at 1-2 of 4.) Petitioner contends that attorney All was ineffective in "failing to request a continuance and/or argue against Petitioner being tried in his absence" and in "failing to make a motion for a new trial after his reappointment during Petitioner's sentencing hearing." (Dkt. No. 21-1 at 2-8 of 12.) Respondent opposes the amendment, contending that "[a]ny late amendment grounds permitted by the Court[] would be in violation of the AEDPA one (1) year statute of limitations ***and*** would be in violation of the AEDPA one (1) year statute of limitations by **an additional** fourteen (14) days." (Dkt. No. 22 at 1 of 3 (emphasis in original).)

A § 2254 petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Rule 15(a) states, *inter alia*, "A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (b) if the pleading is one

to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a). Respondent filed the Motion for Summary Judgment on September 10, 2015. (Dkt. No. 17; *see also* Dkt. No. 18.) Petitioner filed the instant Motion to Amend on September 21, 2015, well within the 21-day period set forth in Rule 15(a). (*See* Dkt. No. 21 at 4 of 4; Dkt. No. 21-3 at 2 of 2.) Petitioner did not need permission of the Court to amend. Accordingly, his Motion to Amend (Dkt. No. 21) is GRANTED.

## B. Ground One

In Ground One, Petitioner contends he was deprived "of the guarantees and benefits of the Fifth, Sixth and Fourteenth Amendment rights where he was tried upon a state created indictment without benefit of trial counsel and/or a record demonstrating an intentional waiver and/or relinquishment of the right to counsel." (Dkt. No. 1 at 6-7 of 24.) Petitioner asserts the record "is replete with references and testimony as to [his] attempt to obtain Mr. Smith as private counsel," and he "was in contact with the public defender, even if it w[as] periodic." (Dkt. No. 1 at 7 of 24.) Petitioner states, *inter alia*, (verbatim):

> It was made apparent by the facts relayed to the trial court that Petitioner had spoken with the public defender and was employed at a steady job to pay the required fees for retaining private counsel. Furthermore, it was evident by the facts that were placed into the record, prior to the public defenders office being relieved, that the public defenders office had a familiarity with the case and it's issues, had obtained communication and discovery from the prosecution; and could have remained counsel of record for the purpose of defending this Petitioner and putting forth [some form] of defense that would have satisfied the Sixth Amendment right to counsel at all critical stages of the criminal proceedings. Petitioner would assert that an empty defense table where there is no defendant and no defense counsel does not constitute a fair and impartial trial . . . .

(Dkt. No. 1 at 7 of 24.)

The claim set forth in Ground One is similar the same claim Petitioner raised on direct appeal; on direct appeal, he argued "the circuit court judge erred in finding he waived his right to counsel." *Pride*, 2007 WL 8400156, at *1. The South Carolina Court of Appeals found no error. *Id*. In its

opinion, the court provided the following background as to how Petitioner came to be tried *in absentia* and without counsel:

> On October 13, 2004, Pride's case was called for trial. Although Pride was not present, William All, the public defender assigned to his case, appeared in court. When the circuit court judge inquired about Pride's absence All outlined the history of his representation of Pride. All was initially appointed to represent Pride on two other drug charges. After Pride was arrested on a bench warrant, he retained Fletcher Smith, a private attorney. All explained that he was again appointed to represent Pride on September 13, 2004, the first day of the term of court for which Pride was originally scheduled to go to trial. On that day, Pride was still represented by Smith. The circuit court judge, however, granted Smith's motion to be relieved and informed Pride that he needed to retain an attorney. Because Pride qualified for the public defender's office, All was again appointed to his case.

> Pride failed to appear for two scheduled appointments with All. Each time, Pride informed All that he could not attend the appointments because of his work schedule. After the two missed appointments, All sent Pride a letter on October 1, 2004, indicating that his trial was scheduled for the week of October 11, 2004, and that he could not adequately represent him without speaking with him. Additionally, All asked Pride to advise him if he had retained private counsel. In response, Pride scheduled another appointment for October 7th. Pride again failed to appear for this appointment and offered no explanation.

> On October 11th, Pride went to the Union County courthouse to report for roll call and was arrested for a driving under suspension charge. When officers searched Pride's person, they discovered $5,000 in his pocket. While in custody, law enforcement transported Pride to the courthouse so that he could speak with All. At that time, Pride told All that Smith was again representing him and that he had sent some money to Smith. Pride also claimed that he had intended to give Smith the $5,000 after he reported for roll call. Later that evening, Pride was released from custody. The next morning at the courthouse, All told Pride that Smith needed to come to the courthouse to review the pre-trial motions that the solicitor intended to use during his case. According to All, Pride indicated that Smith would come to the courthouse. All then contacted Smith's office in the afternoon and discussed the matter with Smith's administrative assistant. The administrative assistant informed All that Pride had attempted to pay $250 for Smith's representation. In response, All stated that Pride had indicated to him that he had $5,000 for Smith. Although Smith's administrative assistant stated that she would contact Pride about payment and then call All back, she did not contact All and there is no evidence in the record of an agreement by Smith to represent Pride. On the morning of trial, the solicitor contacted All and told him that Smith's office had informed him that Smith did not represent Pride.

Upon hearing this factual recitation, the solicitor moved to have Pride tried in his absence. The circuit court judge then inquired whether All wished to make a motion to be relieved as counsel. Although All was hesitant to make the motion out of an ethical obligation to his client, he made the motion which was granted by the judge. In so ruling, the judge found that Pride waived his right to counsel by his conduct. In explaining his ruling, the judge believed that Pride was "sort of playing the attorney game so to speak and saying somebody represents him and they say they don't." Pride was then tried and convicted for the drug offenses. After the jury returned a verdict, the judge issued a sealed sentence.

On January 18, 2005, Pride appeared in court to be sentenced. Pride admitted that he did not have an attorney for the sentencing hearing. All appeared at the hearing and again explained his history of representing Pride. He indicated that he could "perfect an appeal for [Pride] if he wants to raise the issue of whether or not he shouldn't have been tried in his absence." All indicated that he would move for appellate defense to represent Pride in his appeal. The judge then asked All to stand with Pride as he imposed the sentence. The judge sentenced Pride to twenty-five years imprisonment and a $50,000 fine for PWID and fifteen years imprisonment and a $10,000 fine for PWID within proximity of a school. The sentences were to be served concurrently. This appeal followed.

*Id.* at *1-2.

Petitioner argued the trial judge "erred in relieving All as [Petitioner's] counsel and proceeding with the trial in his absence," asserting that "his conduct was not sufficient to establish that he waived his right to counsel." *Id.* at *3. The South Carolina Court of Appeals questioned whether Petitioner had preserved the issue for appellate review, noting that "[a]lthough Pride's lack of trial representation was discussed at his sentencing hearing, Pride never moved for a new trial on the ground that he did not knowingly waive his right to counsel." *Id.* For purposes of the decision, the court "assum[ed] general discussion during the sentencing hearing was sufficient to preserve this issue," and concluded that "the circuit court judge correctly found Pride waived his right to counsel by his conduct." *Id.*

The South Carolina Court of Appeals stated, *inter alia*,

"The Sixth Amendment guarantees criminal defendants a right to counsel. This right may be waived." *State v. Gill*, 355 S.C. 234, 243, 584 S.E.2d 432, 437 (Ct. App.2003) (citations omitted). This court has explained that "[a] defendant may surrender his right to counsel through (1) waiver by affirmative, verbal request; (2) waiver by conduct; and (3) forfeiture." *State v. Thompson*, 355 S.C. 255, 262, 584 S.E.2d 131, 134 (Ct. App.2003).

16

In support of his argument, Pride appropriately relies on our decision in *State v. Thompson*, 355 S.C. 255, 584 S.E.2d 131 (Ct.App.2003). However, as will be more fully discussed, neither *Thompson* nor our more recent case of *State v. Roberson*, 371 S.C. 334, 638 S.E.2d 93 (Ct.App.2006), *cert. granted* (Oct. 19, 2007), require reversal of Pride's convictions and sentences.

In *Thompson*, the defendant was tried in absentia and without counsel for the offenses of discharging a firearm into a dwelling and malicious injury to personal property over $1,000 but less than $5,000. After the jury convicted Thompson, the judge issued a sealed sentence. At sentencing, Thompson's counsel moved for a new trial because he was denied the right to counsel. Counsel claimed that Thompson had appeared at four or five roll calls after his arrest. Additionally, counsel alleged that Thompson, despite his request, had been turned down for a public defender because he did not meet the financial requirements to qualify. In terms of Thompson's failure to appear at trial, his counsel informed the court that Thompson was not given adequate notice of the trial date. *Thompson*, 355 S.C. at 260, 584 S.E.2d at 133. The court denied Thompson's motion for a new trial. *Id.* at 260, 584 S.E.2d at 134. On appeal, this court reversed the decision of the circuit court. We held that Thompson's failure to appear at trial did not rise to the level of waiver. *Id.* at 266, 584 S.E.2d at 136. Our decision was based on the following factors: (1) Thompson had not been advised of the dangers and disadvantages of self-representation under *Faretta*; (2) there was no inference in the record that Thompson understood the dangers and disadvantages of self-representation; and (3) Thompson did not have a prior record which would have familiarized him with the criminal court system. *Id.* at 267, 584 S.E.2d at 137.

Recently, this court had the opportunity to apply *Thompson* in reaching its decision in *State v. Roberson*, 371 S.C. 334, 638 S.E.2d 93 (Ct.App.2006), *cert. granted* (Oct. 19, 2007). In *Roberson*, the defendant was arrested and then released on bond for failing to register as a sex offender. The terms of the bond required the defendant to appear for roll call at the term of general sessions court in Dorchester County beginning on November 29, 1999. By signing the bond, the defendant acknowledged that he would be tried in his absence if he failed to appear in court. The Dorchester County Solicitor's office mailed to the defendant's last known address two notices of appearances for the terms of court scheduled for November 29, 1999, and January 10, 2000. On February 16, 2000, the defendant was tried in his absence without counsel. After the jury convicted the defendant, the circuit court judge issued a sealed sentence.

Approximately three years later, the defendant, who was represented by counsel, appeared before the circuit court to be sentenced. During this hearing, the defendant's counsel moved for a new trial on the grounds the defendant did not knowingly and voluntarily fail to appear for his trial and he was denied his right to be represented by counsel at trial. Because it was unclear whether the defendant had been represented at trial, the judge continued the motion until a trial transcript could

be located. At the final hearing, the defendant's counsel moved to vacate the defendant's conviction and sentence primarily on the ground that he was not represented by counsel at trial. In response, the solicitor asserted the defendant waived his right to counsel by failing to appear and that he was apprised of his right to counsel at the bond hearing. The judge denied the motion for a new trial finding the defendant waived his right to counsel because the terms of his bond indicated that he would be tried in his absence if he failed to appear and he had been informed of his right to counsel at the bond hearing. *Roberson*, 371 S.C. at 337, 638 S.E.2d at 94.

On appeal, we reversed the circuit court judge's decision and remanded for a new trial. *Roberson*, 371 S.C. at 339, 638 S.E.2d at 96. Applying *Thompson*, we found the defendant's failure to appear at trial did not constitute an affirmative waiver of his right to counsel. Moreover, because the defendant was never advised of proceeding without representation, we declined to infer that the defendant's conduct, i.e., his failure to appear at trial, constituted a waiver of his right to counsel. *Id.* at 339, 638 S .E.2d at 95.

Although a cursory reading of above-outlined cases would appear to warrant a reversal of Pride's convictions and sentences, upon closer review we find a crucial difference between the facts in Pride's case and those of *Thompson* and *Roberson*. Significantly, unlike Pride, the defendants in *Thompson* and *Roberson* were not represented by counsel until the sentencing hearing. Thus, the finding that the defendants in *Thompson* and *Roberson* waived their right to trial counsel was based solely on their failure to appear for trial. Here, Pride not only failed to appear for trial but he also failed to cooperate with his appointed counsel and knowingly attempted to manipulate the court system. Pride was represented by appointed counsel and given additional time to prepare for trial after his private attorney was relieved. Pride repeatedly failed to appear for his scheduled appointments with the public defender or offer any assistance in preparation for his defense. Pride essentially "fired" his appointed attorney by assuring him up to the day before trial that Smith was representing him and he had sent Smith money to retain him as counsel. Pride, however, was aware that Smith had not agreed to represent him. Despite this knowledge and his awareness of the trial date, Pride failed to cooperate with his appointed counsel and failed to retain a private attorney by the date of the scheduled trial. Furthermore, there is evidence in the record that someone had seen Pride in the courthouse shortly before the case was called for trial. Yet, Pride refused to show up for trial apparently because he was represented by appointed counsel rather than counsel of his own choosing. Based on the foregoing, we find Pride's deliberate, dilatory, and manipulative conduct was sufficient to waive his right to counsel.

Additionally, we reject Pride's contention that his convictions should be reversed because the trial judge failed to admonish him regarding the dangers and disadvantages of self-representation pursuant to *Faretta v. California*, 422 U.S. 806 (1975). In *Faretta*, the United States Supreme Court ruled that a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so. *Faretta*, 422 U.S. at 835. *Faretta*,

however, is inapposite to the facts of the instant case. At no point did Pride indicate that he wanted to represent himself. Instead, he consistently communicated to the court and his court-appointed attorney that he wanted to retain a private attorney. *See, e.g., Robards v. Rees*, 789 F.2d 379, 383 (6th Cir.1986) (noting exception to application of *Faretta* where "prosecution makes an affirmative showing that the defendant's request for self-representation is merely a tactic to secure a delay in the proceeding"); *State v. Jones*, 546 P.2d 45, 51 (Ariz.Ct.App.1976) (finding *Faretta* was not controlling where defendant did not request that he be permitted to represent himself but, instead, requested on the day of trial that his present attorney be fired and that a new one be appointed); *State v. Shumaker*, 914 So.2d 1156, 1162 (La.Ct.App.2005) (holding defendant's reliance on *Faretta*, was misplaced and stating "defendant never expressly asked that he be allowed self-representation. He simply indicated that he wanted to fire his counsel. That statement certainly does not reach a clear and unequivocal expression requesting the right to represent oneself as required by *Faretta*.").

. . .

We believe our decision is also consistent with case law in this state where our appellate courts have found a defendant's conduct constituted a waiver of his right to counsel. *See State v. Cain*, 277 S.C. 210, 210–11, 284 S.E.2d 779, 779 (1981) (inferring waiver of counsel and affirming defendant's conviction and sentence where defendant, who was tried *in absentia* and without counsel for third-offense driving under the influence, failed to fulfill the conditions of his appearance bond and neglected to keep in contact with his attorney despite knowing the trial was imminent); *see also State v. Jacobs*, 271 S.C. 126, 126–28, 245 S.E.2d 606, 607–08 (1978) (inferring defendant waived his right to counsel where: (1) trial court allowed defendant, a non-indigent, reasonable time to retain counsel; (2) trial court urged defendant on several occasions to retain counsel and provided defendant access to a telephone and additional time to make the arrangements; (3) defendant on the day of trial did not name his attorney; and (4) defendant failed to make a sufficient showing of reasons for his failure to have counsel present at trial); *State v. Gill*, 355 S.C. 234, 245, 584 S.E.2d 432, 437–38 (Ct.App.2003) (inferring defendant waived his right to counsel where defendant failed to retain counsel for trial despite his repeated assurances to the court that he intended to hire private counsel and did not require the appointment of a public defender).

Pride attempts to distinguish the above-referenced cases on the basis that the defendants in those cases were non-indigent. We find this distinction to be unavailing. Similar to the non-indigent defendants, Pride attempted to "play the system in": (1) refusing to retain counsel by the scheduled trial date; (2) giving repeated assurances to his court-appointed counsel and the prosecution up until the day of trial that he had retained a private attorney; and (3) failing to cooperate with his court-appointed counsel. The fact that Pride may not have had the financial means to hire counsel has no bearing on our determination that Pride's conduct was sufficient to constitute a waiver of the right to counsel. Pride was appointed counsel, but voluntarily chose not

to utilize assigned counsel despite his knowledge that he had not retained another attorney. *Cf. State v. Clay*, 11 S.W.3d 706, 713 (Mo.Ct.App.1999) (holding indigent defendant tried *in absentia* and without counsel impliedly waived his right to counsel and, therefore, the statutory requirement for a written waiver of right to counsel was not required).

We emphasize that our decision is limited to the specific facts of this case. Here, the constitutional mandates regarding a defendant's right to the assistance of counsel were satisfied in that Pride was in fact appointed counsel. Pride, however, willingly chose to disregard this appointment in an attempt to procure counsel of his own choosing up until the day of trial. Because we cannot overturn our state's prior precedent that a waiver of a right to counsel may be inferred by a defendant's conduct, we reluctantly hold Pride's conduct was sufficient to try him *in absentia* and without counsel.

*Pride*, 2007 WL 8400156, at *3-7.

Despite its holding, the South Carolina Court of Appeals expressed "displeasure with the policy of permitting a defendant to be tried in absentia and without counsel." *Id.* at *7. In a footnote, the court noted that its research "reveals very few published decisions where a trial court permits a defendant to be tried in absentia and without counsel" and that "the majority of the cases which present this factual scenario arise out of proceedings in [South Carolina's] trial courts." *Id.* at *7 n.4. The court stated, "Because the right to counsel is such a fundamental right, we believe the more prudent policy would be for a trial judge to decline to relieve counsel immediately prior to trial if a defendant is being tried in absentia." *Id.* at *7.

Petitioner argues the state courts' rulings were "contrary to clearly established federal law," citing *Faretta v. California*, 422 U.S. 806 (1975); *United States v. Cronic*, 466 U.S. 648 (1984); and *Johnson v. Zerbst*, 304 U.S. 458 (1938), as well as the Fifth, Sixth, and Fourteenth Amendments. (Dkt. No. 30 at 5 of 11.) While the undersigned–as the South Carolina Court of Appeals did–"express[es] displeasure" with allowing Petitioner to be tried *in absentia* and without counsel, the state court's determination was not contrary to, or an unreasonable application of, clearly established federal law, as established by the Supreme Court of the United States, nor did the state court's adjudication result in a decision that was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

20

In *Zerbst*, the Supreme Court stated, "The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the *background, experience, and __conduct__* of the accused." *Zerbst*, 304 U.S. at 464 (emphases added). As the state court ruled that Petitioner waived his right to counsel via his conduct, that decision is not contrary to *Zerbst*. Nor is the state court decision contrary to *Faretta*. In that decision, the Supreme Court addressed the question of "whether a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so." *Faretta*, 422 U.S. at 807. The Court concluded that "[i]n forcing Faretta, under these circumstances, to accept against his will a state-appointed public defender, the California courts deprived him of his constitutional right to conduct his own defense." *Id*. at 836. *Faretta* is easily distinguishable from the case *sub judice*, as Petitioner never expressed a desire to proceed *pro se*; Petitioner asserted he wanted one particular attorney–Fletcher Smith–to represent him, even though Petitioner had not "re-retained" Smith at the time of the trial.

*Cronic* does not entitle Petitioner to relief. In *Cronic*, the Supreme Court held that a Sixth Amendment violation may be found without inquiring into counsel's actual performance or requiring the defendant to show the effect it had on the trial when "circumstances [exist] that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," *Cronic*, 466 U.S. at 658. The Court in *Cronic* stated,

> [B]ecause we presume that the lawyer is competent to provide the guiding hand that the defendant needs, the burden rests on the accused to demonstrate a constitutional violation. There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.
>
> Most obvious, of course, is the complete denial of counsel. The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial. Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.

*Cronic*, 466 U.S. at 658-59. *Cronic* does not entitle Petitioner to relief–the case was not about when an individual had waived his right to counsel.

21

As noted above, the United States Supreme Court has plainly said that an individual may waive his or her right to counsel through conduct. *Zerbst*, 304 U.S. at 464. In the case *sub judice*, the state court concluded that Petitioner waived his right to counsel through his conduct in (a) failing to appear for trial; (b) failing to cooperate with his appointed counsel; and (c) "knowingly attempt[ing] to manipulate the court system." *Pride*, 2007 WL 8400156, at *4. The undersigned has located no Supreme Court case indicating such a finding is contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Accordingly, he is not entitled to habeas relief. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, let alone one in Van Patten's favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law. Under the explicit terms of § 2254(d)(1), therefore, relief is unauthorized." (internal quotation marks and citations omitted)).

## C. Ground Two

In Ground Two, Petitioner contends that his rights pursuant to the Fifth, Sixth, and Fourteenth Amendments were violated "where he was tried . . . without the benefit of notice, or a knowingly and intelligently [sic] waiver to be presented at a trial by jury." (Dkt. No. 1 at 11-12 of 24.) Respondent contends that because Petitioner did not raise Ground Two on direct appeal, it is procedurally barred. (Dkt. No. 18 at 42 of 72.)

"Federal habeas review of a state prisoner's claims that are procedurally defaulted under independent and adequate state procedural rules is barred unless the prisoner can show cause for the default and demonstrate actual prejudice as a result of the alleged violation of federal law, or prove that failure to consider the claims will result in a fundamental miscarriage of justice." *Lawrence v. Branker*, 517 F.3d 700, 714 (4th Cir. 2008) (quoting *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000)). As the Fourth Circuit stated in *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004),

> [The] exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseem[liness] of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan v. Boerckel*, 526 U.S. 838,

845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (internal quotation marks and citation omitted). Thus, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"-which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *Id*. at 845, 847, 119 S.Ct. 1728. And this opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir.2000) (citing *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir.1997) (internal quotation marks omitted)). In other words, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir.1994) (citation and internal quotation marks omitted).

*Longworth*, 377 F.3d at 448.

Procedural default may be excused if the Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012). In the alternative for showing cause and prejudice, a petitioner may attempt to demonstrate a miscarriage of justice, e.g., actual innocence, *Bousley v. United States*, 523 U.S. 614, 623 (1998); *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995), or abandonment by counsel. *Maples v. Thomas*, 132 S. Ct. 912, 924 (2012).

As noted above, Petitioner raised only one issue on direct appeal:

Whether the court erred by relieving appellant's appointed counsel immediately before appellant's jury trial in his absence began since not "sufficiently cooperating" did not justify this drastic step, and the judge's ruling that appellant waived his right to counsel by his conduct was an abuse of discretion?

(Dkt. No. 18-1 at 130 of 194.) He did not, as Respondent notes, raise the issue of being tried *in absentia* on direct appeal. Accordingly, the claim is defaulted.[4] Petitioner has not shown cause and

---

[4]The state court seems to have addressed him being tried *in absentia*, at least to a degree, as it addressed Petitioner being tried *in absentia* and without counsel. *See Pride*, 2007 WL 8400156. The court did not address the claim as Petitioner has raised it herein. Even if the claim is not procedurally barred, however, it has no merit. The state court specifically found Petitioner had notice of the trial. *See id*. at *4 (noting that Pride was "aware[] of the trial date"). Furthermore, "[t]his federal district court has upheld trials in absentia conducted by South Carolina Courts of General Sessions where the state bond apprised the defendant that he or she must appear at trial." *Rice v. Cartledge*, Civ. A. No. 6:14-cv-3748-RMG, 2015 WL 4603282, at *22 (D.S.C. July 29, 2015) (citations omitted). In the case *sub judice*, Petitioner's signed bond paperwork informed him that if he failed to show up for trial, he would be tried *in absentia*. (*See* Dkt. No. 18-2 at 107 of 120; *see also* Dkt. No. 18-1 at 115 of 194.)

prejudice for the default, nor has he demonstrated a miscarriage of justice, actual innocence, or abandonment by counsel. The undersigned therefore recommends granting summary judgment to Respondent as to Ground Two. *See McClurkin v. Stevenson*, Civ. A. No. 0:08-0106-TLW-PJG, 2009 WL 764964, at *9 (D.S.C. Mar. 20, 2009) (concluding the petitioner procedurally defaulted on claim that the trial court erred in failing to grant a mistrial where "the Court of Appeals found that [petitioner] did not satisfy the procedural requirements to preserve this issue for appeal"); *see also Drayton v. Evatt*, 312 S.C. 4, 9, 430 S.E.2d 517, 520 (1993) ("Issues that could have been raised at trial or on direct appeal cannot be asserted in an application for post-conviction relief absent a claim of ineffective assistance of counsel."); *Simmons v. State*, 264 S.C. 417, 420-23, 215 S.E.2d 883-86 (1975) (concluding the following two issues were direct appeal issues, and therefore not properly raised in the post-conviction relief proceeding: "Whether the Trial Judge's rebuke of trial counsel constituted prejudicial error?" and "Whether it was prejudicial error for the Trial Judge to permit comment by the solicitor on Appellant's failure to call his wife as a witness when she was unavailable?").

**D. Ground Three**

Petitioner contends in Ground Three that his trial counsel "and/or" public defender were "ineffective for failing to disclose a plea offer of 10-years." (Dkt. No. 1 at 15 of 24.) Petitioner states, *inter alia*,

> Petitioner testified at the Post-Conviction Relief proceedings that, had either counsel of record at anytime during their representation . . . informed him about the 10-year plea offer, he would have accepted it and appeared before the trial court for sentencing in accordance with that deal. Yet, even as testified by public defender the deal was never disclosed. Petitioner is of the belief and opinion that Mr. Smith was aware of the offered plea and prior to his being relieved failed to disclose it to Petitioner.

(Dkt. No. 1 at 16 of 24.)

As to this claim, the PCR court noted the following testimony at the PCR hearing:

> Counsel Smith testified he was retained to represent the Applicant in this matter. Counsel stated he attended a bond hearing in the Applicant's behalf and met with the solicitor about the case. Counsel testified he had a disagreement with the

24

Applicant and that the Applicant had not paid the entire retainer fee. Subsequently, the Applicant fired Counsel, and Judge Maddox relieved Counsel. Counsel also testified he did not recall a plea offer from the State, and there was no record in his file concerning a plea offer. . . .

The Applicant testified he wanted a new trial and understood he could get the maximum sentence which would be forty (40) years. He testified he was arrested on April 3, 2003 and retained Counsel Smith, who was later relieved by the Court. He asserted there was a ten-year plea offer from the State, and he wanted to accept the plea offer, but was unable to do so. . . .

. . .

Counsel All testified he was appointed to this case after Counsel Smith was relieved. While he was aware of an offer by the State, Counsel stated the State had withdrawn the offer before he could present it to the Applicant. Applicant failed to get in touch with him when requested.

(Dkt. No. 18-2 at 108-11 of 120.)

In addressing the merits of Petitioner's claim, the PCR court "f[ound] . . . the Applicant's testimony concerning ineffective assistance of counsel not credible while finding the testimony of Counsel Smith and Counsel All credible." (Dkt. No. 18-2 at 113 of 120.) The court further stated,

The Applicant alleged Counsel Smith was ineffective for failing to act on a plea offer from the State. This allegation is without merit.

The Applicant initially engaged Counsel Smith to represent him. There was a disagreement between Counsel Smith and the Applicant, resulting in Counsel Smith being fired by the Applicant, and Counsel Smith was relieved of his representation by Court order. Counsel Smith had not been paid as promised, and Counsel Smith did not believe the Applicant had the financial ability to retain an attorney to represent him. He advised the Applicant to apply for the public defender. The Applicant applied, and Counsel All was appointed to represent him.

The solicitor handling the case thereafter directed his communications about the case to Counsel All, the attorney of record. The Applicant would not communicate with Counsel All. He did not show up for several appointments, did not return some phone calls, and did not cooperate with Counsel All in any way to prepare for his upcoming trial of which the Applicant was aware. A plea offer was made to Counsel All, but due to the Applicant's refusal to communicate, the offer was withdrawn by the new solicitor on the case before Counsel All could discuss it with the Applicant.

The Applicant alleges that a plea bargain offer was made to Counsel Smith and that Counsel Smith did not tell him about it. In his testimony at the PCR hearing, Counsel Smith did not remember any plea offer from the State. The Applicant provided no proof other than his naked allegation and did not testify as to how he

25

learned of such an offer from Smith. It is more likely that the offer was made to his attorney, Counsel All, by the solicitor, but that offer was withdrawn before it could be communicated to him by Counsel All. It is clear from the applicant's testimony that he never considered Counsel All his attorney, even though up to the day before his trial, Counsel Smith's office informed the solicitor he did not represent the Applicant. The Applicant further admitted he knew Counsel Smith was relieved by a Court order over a month before his trial.

The Applicant would have had an opportunity to accept a plea bargain if he had communicated and had been cooperative with his attorney, Counsel All. Unless he accepted a plea bargain offer, he would almost certainly have been convicted by a jury, even with the representation of an attorney at trial.

This Court finds there is no credible evidence that Counsel Smith received a plea bargain offer from the solicitor and failed to communicate the offer to the Applicant. Counsel Smith testified he did not remember any offer from the State. This Court does not find the Applicant's self-serving testimony credible on this issue. The Applicant has failed to prove that Counsel Smith rendered ineffective assistance and accordingly, this allegation is denied.

(Dkt. No. 18-2 at 115-17 of 120.)

"The Sixth Amendment right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process." *Merzbacher v. Shearin*, 706 F.3d 356, 363 (4th Cir. 2013) (citing *Missouri v. Frye*, 132 S.Ct. 1399, 1405 (2012)). The test set forth in *Strickland* "governs ineffective assistance of counsel claims involving the plea process." *Id*. As set forth above, to prevail on an ineffective assistance of counsel claim, the Petitioner must establish (a) that counsel's performance was deficient, and (b) that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984).

To show prejudice from ineffective assistance of counsel in a case involving a plea offer, petitioners must demonstrate a reasonable probability that (1) "they would have accepted the earlier plea offer had they been afforded effective assistance of counsel," and (2) "the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law."

*Merzbacher*, 706 F.3d at 366 (quoting *Frye*, 132 S.Ct. at 1409).

The undersigned recommends granting summary judgment to Respondent as to Ground Three. The state court found that Petitioner's testimony was not credible and that counsel's testimony was credible. Such a factual finding on credibility is "presumed to be correct"; Petitioner has the

26

"burden of rebutting the presumption . . . by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Wilson v. Ozmint*, 352 F.3d 847, 858 (4th Cir. 2003); *cf. Wilson*, 352 F.3d at 860 ("These facts do not compel the credibility determination reached by the state court, but they certainly provide sufficient basis, for purposes of section 2254(d)(2), to support such a determination."). He has not done so. As noted by the PCR court, counsel Smith did not recall the plea offer or have anything in his file about a plea. (Dkt. No. 18-2 at 34 of 120.) Although counsel All was aware of the offer, All also testified that he "never had an opportunity to talk to Mr. Pride about the offer." (Dkt. No. 18-2 at 69 of 120.) Petitioner himself admitted at the PCR hearing that he "didn't return any of [Mr. All's] phone calls or his letters that he sent to [Petitioner] to come in to try to prepare and get ready for [the] case" because he "planned all the time to have Mr. Smith represent" him. (Dkt. No. 18-2 at 63 of 120.)

The state court's determination was not contrary to, or an unreasonable application of, clearly established federal law, as established by the Supreme Court of the United States, nor did the state court's adjudication result in a decision that was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Accordingly, Petitioner is not entitled to habeas relief. *See Merzbacher*, 706 F.3d at 365-67 (reversing district court's grant of habeas relief on claim that counsel was ineffective in failing to convey a ten-year plea offer to him where "even if [the petitioner] did demonstrate that the state court was unreasonable in finding he did not receive deficient performance under *Strickland*, he did not demonstrate that the state court was unreasonable in finding it unlikely that *Strickland* prejudice resulted from this deficient performance," stating, "[I]t is entirely clear that to demonstrate a reasonable probability that he would have accepted a plea, a petitioner's testimony that he would have done so must be credible. . . . Accordingly, only if Merzbacher's testimony that he would have accepted the plea was deemed credible could *Frye* and *Lafler* assist him. The state court found this testimony not credible. Our close examination of the record and application of §§ 2254(d)(2) and 2254(e)(1) require us to defer to that finding.").

The undersigned further notes that Petitioner's claim is directly refuted by his testimony at the PCR hearing. Petitioner testified that attorney Smith did relay a plea offer to him:

27

Q. Prior to [Mr. Smith] being relieved, was there an issue regarding a plea offer that came up?

A. Yes.

Q. Could you please explain that?

A. The solicitor, they gave me a plea offer of ten years.

Q. Okay. And what happened once that plea offer was given to you?

A. Excuse me?

Q. What happened once you were told about that plea offer?

A. I don't–I can't–I can't recall. Me and Fletcher [Smith], he just–he just said something about somebody is going to testify against me and I need–I needed to relieve him as counsel. We had a disagreement about something.

Q. Okay. Were you wanting or willing to take that ten year plea offer?

A. Yes.

Q. Okay. But you weren't able to do that, is that correct?

A. No.

(Dkt. No. 18-2 at 42-43 of 120.) Thus, to the extent Petitioner claims counsel was ineffective for failing to tell him about the plea offer, such a claim is directly refuted by the record. *See Mason v. Allen*, 605 F.3d 1114, 1121 (11th Cir. 2010) ("To the extent that Mason argues that the State failed to advise him of his *Miranda* rights, we find this claim refuted by the record. Accordingly, we cannot say that the state court's ruling on the legality of his confession is contrary to or an unreasonable application of clearly established federal law."). Respondent is entitled to summary judgment as to Ground Three.

### E. Ground Four

In Ground Four, Petitioner asserts that attorney All was ineffective in "failing to request a continuance and/or argue against Petitioner being tried in his absence" and in "failing to make a motion for a new trial after his reappointment during Petitioner's sentencing hearing." (Dkt. No. 21-1

at 2-8 of 12.) Petitioner raised both of these issues at the PCR hearing and in his Petition for a Writ of Certiorari.[5]

In addressing these claims, the PCR court stated,

The Applicant . . . testified that prior to Counsel being relieved, there was no objection to a trial in absence or request for a continuance. He also testified to a plethora of reasons he felt he was prejudiced, including: no objection made to two jurors who allegedly had connections with the State; no defense witnesses called at the Jackson v. Denno hearing, no objection to a redacted statement which included the Applicant's admission that "[Applicant] started selling crack again," no objection to the chain of custody, no questioning the chemist's qualifications and no objection to the reasonable doubt jury charge. In addition, the Applicant asserted when Counsel All was reappointed for the sentencing hearing that he failed to move to reconsider the sentence. He once again testified he thought Counsel Smith represented him and that he was not "trying to play the system," but that he wanted counsel at trial.

On cross-examination, the Applicant admitted he knew Counsel Smith had been relieved by the court one month before his trial and that he was appointed Counsel All. He also admitted his trial would have been different had he shown up to it, but was not informed by Counsel All of the trial date. However, Counsel All stated on the record that someone in the courtroom had seen the Applicant in the parking lot that day. When the bailiff called the Applicant's name three times on the courthouse steps and in the hall of the courthouse, there was no answer. . . .

This Court questioned the Applicant and he admitted that he fired Counsel Smith and knew Counsel Smith did not represent him. He also admitted he did not meet with Counsel All because he wanted Counsel Smith to represent him. He further admitted he did not cooperate with Counsel All even though the court records show Counsel All was the attorney of record.

The Applicant lastly admitted he had five prior convictions and that this was "not his first rodeo" with the criminal justice system.

Counsel All testified he was appointed to this case after Counsel Smith was relieved. . . . Applicant failed to get in touch with [All] when requested. He received trial notification for the week of October 11, 2004. Counsel All testified he attempted to contact the Applicant, but was unable to do so. He sent a letter to the Applicant explaining that he needed to meet with the Applicant and discuss this case in preparation for trial. In this letter, Counsel All also apprised the Applicant that his trial was set for the week of October 11, 2004. Counsel All testified he actually met with the Applicant at roll call when the Applicant was arrested on October 11, 2004 for Driving under Suspension at the Union County Courthouse. At that time, the Applicant apparently told Counsel All that Counsel Smith represented him, so Counsel All tried to contact Counsel Smith's office. Counsel All testified the

---

[5]The state court did not clearly address the issue of ineffective assistance of counsel in failing to request a continuance and/or argue against Petitioner being tried in his absence. (*See* Dkt. No. 18-2 at 105- of 120.) However, Petitioner did raise this issue in a Motion to Alter or Amend. (Dkt. No. 18-2 at 99-103 of 120.)

Applicant did not show up to his trial, and Counsel All was relieved after a discussion on the record of the Applicant's absence and Counsel All's attempts to locate him. He also stated if the Applicant would have shown up, he would have represented the Applicant. Counsel further stated had he not been relieved, he would have sought a continuance, conducted a Jackson v. Denno, *supra*, [hearing] and filed a suppression motion.

Counsel All further testified there was a discussion about the Applicant's absence, and based on the facts of the case, the trial judge suggested that he would relieve Counsel All due to the Applicant's conduct. Counsel lastly asserted he would have requested a continuance but did not have a chance to do so as the trial court relieved him immediately after the State moved to try the Applicant in his absence.

It is clear from the record that the trial court concluded the Applicant was seeking to prevent his case from being heard. The trial court granted the State's motion for a trial *in absentia*. Upon learning that Applicant had refused to cooperate with Counsel All and would not assist him in preparation for trial, the trial judge relieved Counsel All from representation of Applicant. The undersigned has served in the same judicial district with the trial judge for 15 years and takes judicial notice that it was his policy at that time to relieve a defense attorney before a trial in absence when the defendant was totally uncooperative and refused to cooperate with preparation for trial. Counsel All, the Public Defender, would have been aware of this policy. Once he was relieved as counsel, he had no duty or right to make any motions on behalf of Applicant. It would have been patently obvious that even if he had been able to do so, the trial judge was going forward with the trial that day and such motions would have been denied. Counsel All did not render ineffective assistance in not making such motions.

Additionally, Counsel All testified he was reappointed to the Applicant's case during the sentencing hearing and for the purpose of filing a Notice of Appeal. Counsel also stated, although he is familiar with a Rule 29 SCR CrimP motion for a new trial, he could not remember any successful Rule 29 motions. The only grounds for a new trial which had any merit would have been Applicant's trial *in absentia* without an attorney and without a <u>Faretta</u> warning. These issues were heard on direct appeal and denied. Applicant was not prejudiced because those issues were heard and denied by the S.C. Court of Appeals.

. . .

The court finds the . . . Applicant's testimony concerning ineffective assistance of counsel not credible while finding the testimony of Counsel All and Counsel Smith credible.

. . .

The Applicant also alleged Counsel All rendered ineffective assistance in failing to make a motion for a new trial at the Applicant's sentencing hearing before the Honorable G. Thomas Cooper, Jr., who was not the trial judge that issued the sealed sentences.

This Court observed from the record of the sentencing hearing that Counsel [A]ll volunteered to be reappointed as counsel for the Applicant during the sentencing hearing for the primary purpose of filing a Notice of Appeal so Indigent Defense could prefect an appeal on the Applicant's behalf.

30

This Court finds a motion for a new trial would not have been granted and would not have preserved any issues which were not addressed in the direct appeal. A trial *in absentia* and without an attorney (*pro se*) and without Faretta warnings was addressed by the S.C. Court of [A]ppeals and is the law of the case. Counsel Smith was retained by the Applicant to help with the appeal.

Neither Judge Cooper nor Counsel All had a trial transcript at the sentencing hearing. The Applicant could have testified concerning the voluntary statement, but he did not testify at the PCR hearing as to anything that would make his statement inadmissible. He has a substantial criminal record and has had previous experience with the criminal justice system.

Additionally, there was overwhelming evidence of the Applicant's guilt. Where there is overwhelming evidence of guilt, a trial counsel's deficient representation will not be prejudicial. Ford v. State, 314 S.C. 245, 442 S.E.2d 604 (1994); *see also* Humbert v. State, 345 S.C. 332, 548 S.E.2d 862 (2001); Geter v. State, 305 S.C. 365, 409 S.E.2d 344 (S.C. 1991). Additionally, had the Applicant taken the stand in his own defense, he could have and most likely would have been impeached with his prior convictions.

This Court finds Counsel All was not ineffective for not making a motion for a new trial as Counsel All's main purpose during the sentencing hearing was to file a Notice of Appeal. Further, a motion for a new trial would not have been successful as Judge Cooper was not the trial judge and was not going to overturn another circuit judge's sentence. The Applicant has failed to meet his burden of proving Counsel All was ineffective or that he was prejudiced in this case as there was overwhelming evidence of his guilt. Accordingly, the allegation is denied.

Dkt. No. 18-2 at 109-18 of 120.)

To the extent Petitioner claims counsel was ineffective in failing to move for a new trial, Petitioner is not entitled to habeas relief. The state court found no prejudice because, *inter alia*, the motion "would not have been granted and would not have preserved any issues which were not addressed in the direct appeal," as "[a] trial *in absentia* and without an attorney (*pro se*) and without Faretta warnings was addressed by the S.C. Court of [A]ppeals and is the law of the case." (Dkt. No. 18-2 at 117 of 120.) Given that the state appellate court addressed Petitioner's *pro se* trial *in absentia* and upheld it, the state court's conclusion that Petitioner suffered no prejudice due to counsel's failure to move for a new trial does not warrant federal habeas relief. The state court's conclusion that Petitioner suffered no prejudice is not contrary to, or an unreasonable application of, clearly established federal law, as established by the Supreme Court of the United States, nor did the state court's adjudication result in a decision that was based on an unreasonable determination of the facts.

*See* 28 U.S.C. § 2254(d); *cf. Rasheed v. Smith*, 221 F. App'x 832, 836 (11th Cir. 2007) (the petitioner failed to show prejudice on claim of ineffective assistance of counsel in failing to move for a mistrial or renew motion for severance where, "[d]uring the hearing on [the petitioner's] motion for a new trial, the trial court specifically stated that had counsel moved for a mistrial, it would not have granted the motion," and "the Georgia Court of Appeals noted that if such a motion had been filed, and denied, such a ruling would not have been disturbed on appeal.").

To the extent Petitioner claims counsel was ineffective in failing to request a continuance and/or argue against Petitioner being tried in his absence, the undersigned recommends concluding Petitioner is not entitled to habeas relief. As detailed above, the PCR court noted that it was "clear from the record that the trial court concluded [Petitioner] was seeking to prevent his case from being heard," and that if Mr. All had filed a motion for a continuance, "the trial judge was going forward with the trial that day and such motions would have been denied." (Dkt. No. 18-2 at 112 of 120.) After the solicitor moved to try Petitioner in his absence, Judge Hayes and Mr. All stated, *inter alia*,

> THE COURT: All right. Before I make a ruling on that, Mr. All, where do you stand. Do you wish to be, do you feel, I feel that by his conduct you certainly have a right to move to be relieved because he has not cooperated with you in any way whatsoever and as has happened in other cases it appears he's sort of playing the attorney game so to speak and saying somebody represents him and they say they don't; in any event, I certainly feel very comfortable making a finding he's waived his right to counsel by his conduct and I am certainly not going to put you in a position of sitting there trying a case unprepared, particularly trying a case in someone's absence when you are, have not had adequate conversation with your client due to his conduct. So do you wish to, I know that's an awful position for you to be in, but.
>
> MR. ALL: That is an awful position, Your Honor. I was sitting here trying, sitting here the last 30 minutes running through my mind what to ask the Court because I feel an obligation in some manner to Mr. Pride even though he's failed to fulfill anything in regards to the assistance and cooperation with our office, Your Honor.
>
> THE COURT: Well, let me interject and put this in your thinking, he has pretty much indicated he doesn't want you to represent him because he's continued to say that he has retained and either gone by their office and tried to pay another lawyer yesterday, so I think you may need to factor in the fact that if you sort of, I hate to say this kind of language in Court but you are sort of damned if you do and damned if you don't because if you go forward then he'll be saying he was represented by an attorney he didn't want. If you don't go forward he's going to say he didn't have an attorney at all.

MR. ALL: Well, Your Honor, I do make a motion to be relieved as counsel. Your Honor, I would ask that before the Court starts the case with Mr. Pride that they have the sheriff or the bailiff or someone call his name.

THE COURT; We'll do that.

(Dkt. No. 18-1 at 12-14 of 194.)

As to the claim that counsel was ineffective in failing to argue against Petitioner being tried in his absence, again–the PCR court concluded that "the trial judge was going forward with the trial that day." (Dkt. No. 18-2 at 112 of 120.) Such a factual finding is "presumed to be correct"; Petitioner has the "burden of rebutting the presumption . . . by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner has not done so. *See Fisher v. Lee*, 215 F.3d 438, 446 (4th Cir. 2000) ("Fisher has not shown that the state court findings are unreasonable, unsupported, or otherwise erroneous. Indeed, they are supported by competent evidence.").

Petitioner admitted at the PCR hearing that he "failed to communicate with [Mr. All] whatsoever." (Dkt. No. 18-2 at 60 of 120.) Petitioner admitted that he fired Mr. Smith and that even though he applied for a public defender, he "didn't return any of [Mr. All's] phone calls or letters" because Petitioner "planned all the time to have Mr. Smith represent" him. (Dkt. No. 18-2 at 62-64 of 120.) Moreover, the South Carolina Court of Appeals found that Petitioner was "aware[] of the trial date." *Pride*, 2007 WL 8400156, at *4. The record certainly contains factual support for such a conclusion, as Mr. All informed Judge Hayes prior to Petitioner's trial that after his other attempts to contact Petitioner failed, Mr. All mailed Petitioner a letter (that was not returned to Mr. All) on October 1, 2004, indicating that Petitioner was scheduled to go to trial the week of October 11, 2004. (Dkt. No. 18-1 at 9 of 194.) Furthermore, the state court concluded that Petitioner failed to establish prejudice from his claims that Mr. All was ineffective as there was overwhelming evidence of his guilt. In light of the foregoing, Petitioner is not entitled to federal habeas relief on his claim that counsel was ineffective in failing to request a continuance or argue against Petitioner being tried in his absence. *See Golphin v. Branker*, 519 F.3d 168, 189–92 (4th Cir. 2008) (declining to grant § 2254 relief, even assuming a state court unreasonably applied *Miranda* and *Edwards* when it affirmed the

admission of a confession, where there was overwhelming evidence of guilt and the court could not find that the admission of the confession "substantially swayed" the jury); *Correll v. Thompson*, 63 F.3d 1279, 1291 (4th Cir.1995) (holding that admission of confession, if error, was harmless because evidence against defendant was overwhelming); *Evans v. Warden BRCI*, C/A No. 3:10-cv-2569-JMC, 2013 WL 5670903, at *5 (D.S.C. Oct. 17, 2013) ("Petitioner has not presented any reason for the court to find it probable that the trial judge would have directed a verdict if confronted with a different argument from trial counsel. Similarly, the petitioner has failed to demonstrate that the proceeding would have achieved a different result if he were present or if his trial counsel had objected to his being absent."). The undersigned therefore recommends granting summary judgment to Respondent as to Ground Four.

## CONCLUSION

It is therefore ORDERED, for the foregoing reasons, that Petitioner's Motion to Amend (Dkt. No. 21) is GRANTED. The Clerk is directed to append Docket Numbers 21 and 21-1 to the original petition (Dkt. No. 1.)

IT IS SO ORDERED.

Further, it is RECOMMENDED that Respondent's Motion for Summary Judgment (Dkt. No. 17) be GRANTED, and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. The undersigned further RECOMMENDS that a certificate of appealability be DENIED.[6]

IT IS SO RECOMMENDED.

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

June 30, 2016
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[6]Title 28, Section 2253 provides in relevant part,
(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
(B) the final order in a proceeding under section 2255.
28 U.S.C. § 2253. A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In the case *sub judice*, the legal standard for a certificate of appealability has not been met. The undersigned therefore recommends that a certificate of appealability be denied.

35

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).